May it please the Court, my name is Amanda Fisher, Counsel for the Appellants, United Steel Workers, Local 11-770. Pull the mic a little closer to you. Sorry. Don't be afraid to talk too loud. We do not complain about too loud. Well, that's right. I was going to check. My law clerk said they couldn't hear people yesterday. Can you people hear back there? Oh, you can. Okay. Okay. Can you hear over there? Maybe it's just my age-impaired hearing. Go on. You may proceed. I'll try and speak up. There's a mountain of authority from both the Eighth Circuit and the Supreme Court holding that the vacation of arbitration awards is warranted only in the narrowest of circumstances. As long as the arbitrator is even arguably construing the contract, the award must be upheld, and even serious error will not suffice to overturn it. And as this Court has stated, a court cannot interfere with an arbitrator's award unless it can be said with positive assurance that the contract is not susceptible to the arbitrator's interpretation. In this case, the company agreed to submit the issue of just cause to the arbitrator, and the company agreed that the award of the arbitrator would be final and binding. The sole issue in this case is whether arbitrator Fitzsimmons was at least arguably interpreting the party's contract when he ultimately concluded that the company did not have just cause to terminate Mr. Busher. The arbitrator referred to and quoted from the relevant contract language, which is specifically the just cause provision and Article 29.02 of the contract. He then applied that language to the circumstances of this case, which were that Mr. Busher needed to leave work to seek medical assistance because he was ill. And based on the circumstances of the case and the relevant contract language, the arbitrator ultimately determined that the company did not have just cause to terminate Mr. Busher. Even the district court said that the arbitrator's award was arguably reasonable and applied established principles of contract interpretation in fashioning the award. The district court vacated arbitrator Fitzsimmons' award based on the erroneous conclusion that the arbitrator ignored unambiguous contract language in determining that there was no just cause for discharge, and specifically Article 29.02 of the CBA. Now, Article 29.02 reads insubordination, such as refusal to work on the job assigned, etc., consistent with the employee's classification and safety. And we know that the district court's conclusion in this regard was incorrect for two reasons. First, the issue of whether a contract provision is ambiguous or unambiguous is a matter of contract interpretation. And contract interpretation is a matter left solely for the arbitrator. In this case, arbitrator Fitzsimmons did not find that Article 29.02 was unambiguous. But moreover, in this case, the district court explicitly acknowledged that Article 29.02 actually was ambiguous. And in the event of any contractual ambiguity, the arbitrator is permitted and indeed required to give meaning to that language, and that's precisely what arbitrator Fitzsimmons did in this case. The company agreed to submit the issue of just cause to the arbitrator for determination. And the parties agreed at the arbitration that the arbitrator's decision in that regard would be final and binding. The arbitrator interpreted the contract, applied the contract language to the circumstances at issue in this case, and formulated an award. This court must uphold that award based on case law from both this court and the Supreme Court. And if there are no questions, I'll reserve my remaining time for rebuttal. Well, you say the arbitrator found this provision, 29.02, to be ambiguous? Well, the arbitrator implicitly found the contract language to be ambiguous. What was the ambiguity? The ambiguity, as the district court noted in its award. Now, what did the arbitrator either explicitly or implicitly find to be the ambiguity? The arbitrator implicitly found that discharge is not warranted in every circumstance involving some form of insubordination. So in this case, Roy Busher was terminated because the company perceived him to be insubordinate. The arbitrator found that insubordination under Article 29.02 does not require discharge in every circumstance. And in this circumstance, because Mr. Busher was ill and needed to leave work to seek medical attention, that fits within the consistent with safety language found in that provision. Very well. Thank you. Thank you. Mr. Temple, good morning. You may proceed. Good morning. May it please the court. My name is Rick Temple, and I represent the appellee in this case, PSC Custom DBA Polar Tank Trailer. This is a standard arbitration case in which the union is seeking confirmation of the arbitration award and the employer is seeking vacating of the arbitration award. The Labor Management Relations Act specifically established procedures for the review of arbitration awards in court. Now, I realize that those, and I know the court is well aware, that the standards for review are very limited. It gives great deference to the arbitration decisions. But this type of case here, I would assert, is the very type of case for which the procedures were established under the Labor Management Relations Act Section 301 for review of arbitration awards. In this case, the arbitrator exceeded his powers by substituting his belief of the appropriate discipline. In other words, he had ideas of what he thought would be appropriate, his ideas of industrial justice, and he substituted those for the negotiated and agreed remedial provisions in the collective bargaining agreement and also in the standards of conduct between the parties. It's our assertion as the appellee that Judge Whipple at the district court appropriately analyzed the case, applied the standards of this case, excuse me, of this court, and appropriately vacated the arbitrator's award. I'd like to first point out that the union's arguments through this case have changed, and we have a moving target as to what they've argued in this case. This has no implication by any means on my opposing counsel in that other individuals from her office were the initial attorneys in the case, and she just took over the case recently at this level. So I'm not meaning to make any assertions against her personally. Rather, I just want to alert the court to how the union's position has changed. To the arbitrator, the issue submitted was whether or not there was insubordination. The company asserted that the employee was insubordinate. The union asserted there was no insubordination. The union did not argue there were degrees of insubordination. They didn't argue the safety issue that's now been brought up at this court. They did not argue any other issue other than the employee, Mr. Busher, the grievant, was not insubordinate. Their argument was that at no time was he given direction to do a particular job, and therefore at no time did he refuse that direction. The company's position was at the arbitration level that he was directed to do some work on doors, that he didn't like to do that work, that he said, if you're going to give me that work, then I'm going to claim sick and go home, and he did. They said, well, you need to do the work, and he said, no, I am not going to do that work. That's in the record. That's what was presented to the arbitrator. In fact, when I cross-examined the grievant, I said to him, if the arbitrator finds that you were insubordinate, I know you say you didn't refuse an instruction, but if the arbitrator finds that you were insubordinate, do you agree that the collective bargaining agreement and the standards of conduct mandate discharge for that insubordination? And he said yes, and that's quoted in my brief, his exact quote. In fact, the union business representative, in arguing to the arbitrator in his opening argument and in subsequent discussions during the hearing, said, it's our contention that at no time was he insubordinate. That was what we had at the arbitration level. The arbitrator found that the grievant was insubordinate. So by that, he had to believe the company's version of the events and not the grievant and union's versions of events. Therefore, once he found that the grievant was insubordinate, then the only thing he could do under the powers given him by the contract was to follow the contractual provision section 2902 that said, if you're insubordinate, first offense is immediate discharge. The grievant admitted that, the union admitted that, but the arbitrator didn't like that. So what he said is, I find he was insubordinate, but I'm going to find that because he was sick, that somehow maybe affected his refusal to do the work, and therefore I'm going to reduce the discharge from a discharge to a ten-day suspension. And what we asserted the company did to the district court is he had no authority to do that. That exceeded his authority because that was a clear and unambiguous clause and an admitted clause of the collective bargaining agreement that if he was found to be insubordinate, that it mandated discharge. Well, the arbitrator also found that there were certainly degrees of insubordination. Do you say that was beyond his authority to do? That issue was not presented to him. He found it. I don't care what was presented to him. We do assert that that was beyond his authority. But even the differing degrees of insubordination. I mean, it was handled, the disagreement was handled quietly and peaceably. What did the arbitrator find with respect to whether the grievant was ill at the time? The arbitrator did find that following his leaving work, he went home, and that he did go to the doctor, and the doctor gave him a prescription for bronchitis. He didn't use expletives? He didn't curse at his supervisor? That is correct. In other words, there's no issue here regarding inappropriate activity in the manner in which either the company or the union addressed one another in the respect that they gave each other. Rather, this is solely a case of was he given an excused his insubordination? Pardon? Could the company itself have said, well, you shouldn't have done what you did, but it's not that bad. You've been a trusted value employee. You have never given us trouble. So we're going to overlook this insubordination. Could they have chosen not to follow the collective bargaining agreement? I suppose they could, but that's not what they did in this case. They testified that. Well, they didn't have to fire him. Are you saying that Section 29 said if you're insubordinate, we have no choice but to fire you? No. That's how I read your argument. What I'm saying is that once, because the company chose In other words, for you it's a simple case, or your company. Insubordination, that's the end of the case. No need to talk about what led up to it and all that sort of thing. Correct. And, Your Honor I mean, he could have been writhing in pain on the plant floor. But that's not the evidence that we have. Well, he was ill. Well, he hadn't told anyone he was ill. He said he was ill before he came to work, but he chose to come anyway because he was a perfect attendance employee. He had, in the prior two years, I think the evidence is he hasn't missed a single day. He's received perfect attendance every year. He said he was sick that day, but he wanted to come. He only raised the sickness issue when he was directed to do a job that he didn't want to do. But I would assert that those issues are not before the court because the arbitrator found he was insubordinate. Therefore, if he was insubordinate, the parties had agreed that the first offense the company could discharge and that that was just cause under the collective bargaining agreement. That was a negotiated and agreed provision. And our assertion is that once the arbitrator determined that he was insubordinate, the only thing that he could do as an arbitrator at that time and be within his powers was to affirm the discharge. And the district court correctly, I believe, analyzed that standard and said that he didn't have the power to disregard it. We have numerous court cases. In fact, some of them are cited in the brief. But one of the cases that's relied on by the union in their brief is the Cargill case from 1995 from this court. But that's distinguishable because in that case, this court said, if the collective bargaining agreement expressly provided that an employee who refuses to take an alcohol test will be terminated, we would agree with the district court's decision that the arbitrator's award ignored the plain mandatory language of the agreement as the court held on similar facts in and then at sites. Would you say that this is a case where the arbitrator looked at the two positions of the parties and attempted to strike a middle ground? Yes. And, Your Honor, you've answered that question. My next question is, and it's a little off track, but I'm curious about it because it seems to me relevant to how these cases, the state these cases are in when they come to us. And the question is, in this case, did the company, was it a requirement that the company and the union mutually agree on the arbitrator? Well, yes. The procedure is through the FMCS, Federal Mediation and Conciliation Service, you request a panel. You receive seven names. Then you each strike back and forth and you get down to one. Each side has three strikes. And so, essentially, there's agreement when the process ends. You end up with an arbitrator that's agreeable. Correct. Do you think that because of that process, there's pressure on the arbitrators to find the middle ground out of concern that they'll be struck if they go one way or the other? Yes, Your Honor. It is a major problem that we are experiencing right now in the arbitration field and why I believe that it's so important that the court uphold the district court here. What we have is that arbitrators to continue to be selected have to be chosen by the parties through the system that we have. So what we're seeing over and over again, I'm sure as the court has seen, is that the arbitrator will find that the company proved the facts that supported the discipline, but the arbitrator disagreed with the level of discipline so that the arbitrator then reduced it. We would call it a split the baby case. So we're seeing that over and over again because I would assert, as Your Honor has mentioned, the reason is they want to be selected. And so they look for ways to compromise so that they've thrown a bone to each side. So the manner in which they do it is to find that the company proved the events occurred. Like in this case, he was insubordinate but then reduced the penalty. I'm here on a couple other cases in the last couple years with that very same issue where the arbitrator found that we as a company proved the events and then reduced the penalty. And I would assert that there is that pressure. Different than a court when you're appointed, there is that pressure for arbitrators to make sure that they're selected. Well, that's sort of an attack upon this whole system of arbitration. It is. It's a major issue that we have right now. And yet the Supreme Court keeps telling us that our reviewing role is very limited. That is correct. And, Your Honor, as a practitioner in this area, I'm looking for ways to set up a – to negotiate into collective bargaining agreements perhaps a three-person arbitration panel where you don't give it to one person but that you have a panel. I'm working on that, but that's not what we have here. But your point is if that pressure is indeed there that leads to these decisions, your point is that it's that much more important for the court to serve as a backstop to guard against that kind of practice. Exactly, Your Honor. That is the very point that I was making in the beginning. In other words, to maintain the integrity of the arbitration system. Correct. Has the Supreme Court told us to do that? Well, what the Supreme Court has done is outlined standards, which this court has then taken and those standards have been followed with many explanations. And one of those explanations is that if the arbitrator ignores or fails to follow plain and unambiguous language in the collective bargaining agreement that's agreed by the parties, that he has exceeded his power. And this court has ruled in several cases. And I have those here. Some of them are cited in the brief. In fact, Judge Woolman, in your case, the Trailmobile Trailer case back in 2000, you addressed this very issue by citing the Excel Court case where you said, we vacated an arbitrator's award because the relevant contract contained a clause that provided an employee shall lose his job for the following reasons and then listed the infractions, one of which the employee had violated. And then continuing to quote, we held that when the agreement contains an express provision authorizing the termination of an employee for a specific conduct, the general for cause provision does not conflict with that express discharge provision and thus no ambiguity exists. As Judge Shepard, as you mentioned, if we do not have the court to review arbitrators' decisions if they exceed their power, then there is no system by which that arbitrators would not be free to do whatever they want. And the goal of arbitration is to have a quicker and less expensive procedure by which contractual disputes in the collective bargaining arena can be resolved. But if an arbitrator is free to simply say, okay, I find that he was insubordinate and I realize that the parties have agreed that insubordination is termination, but I don't think that's fair here, then the arbitrators will have free reign to do exactly what the Supreme Court has said they cannot do. They cannot instill their own standards of industrial justice. The parties have agreed what those standards are and the actual arbitrator should be required to follow that. And so I argue to the arbitrator, I argue to the district court, and to this court also, and the district court accepted that argument that once the arbitrator found this employee was insubordinate and had done the acts that the employer alleged, and once he found that then the collective bargaining agreement provisions that say that equates to discharge, the arbitrator had no authority to go past that. I would like to bring up one other point to your honors as I conclude. I see my time is running out, and that is that it should be noted at the district court level that the union specifically stated both in their suggestions in opposition to the company's summary judgment motion and in their reply suggestions in support of their own summary judgment motion the following statement. They were arguing that the arbitrator had not determined really whether there was insubordination, that his ruling was ambiguous in that regard. Different argument than they're making to this court. And here's what they said. Similarly here, this is at the joint appendix, page 244, and also at 264, same quote. Similarly here, arbitrator Fitzsimmons' award could be read as finding that Grievant was insubordinate, in which case the contractually prescribed penalty would be discharged. However, the award can also be read as finding that the Grievant was not insubordinate because his illness clouded his judgment and his refusal to obey an order was therefore not knowing, willful, or deliberate. They're not arguing here that it was not insubordination. They've accepted that. They're arguing that there's an ambiguity regarding the penalty, but that's not what's been argued before. What was argued before was whether or not the arbitrator found insubordination. He clearly made that statement, I find insubordination. Thank you. Your time is up. Thank you, Your Honor. We would ask that you affirm the district court. Ms. Fisher, has the union adopted shifting positions here? No, Your Honor. The union has not adopted shifting positions. The union has argued first with respect to the arbitration. The Grievance itself, the impetus of this whole issue, stated that Mr. Busher was terminated for leaving work because he was sick, and that's found at page 184 of the joint appendix. The arbitrator in his award summarized the union's position as the grievant was not discharged for just cause as he left work because he was ill, and that's at page 205 of the joint appendix. So consistently at the arbitration, the union's position has been that the grievant was sick, and therefore he was not insubordinate. Now, setting that aside, I would also argue that even if the union's argument had been different at the arbitration, that's a completely different form. It's a completely different case. At the arbitration, the union's job is to argue that the company did not have just cause to terminate Mr. Busher. Before the district court and before this court, the union's job is to argue that the arbitration award should be upheld because the arbitrator was interpreting and applying the contract, and the case law upholds awards when the arbitrator is doing just that. So they're completely different cases, and they, in fact, should be different arguments. Now, as to whether the union's case was different before the district court. First, before the district court. The district court had before it the contract and the arbitration award. So all of the facts, all of the issues were before the district court. In the first paragraph in the union's brief, the union's initial brief for summary judgment, which is on page 215 of the joint appendix, the union stated that Mr. Busher was terminated for alleged insubordination after he left work because he was ill. And that the arbitrator, in fact, found he was ill. The union goes on through its papers to state again that, on page 221 of the joint appendix, that the district, that the arbitrator found that Mr. Busher was not truly insubordinate based on the fact that he was ill. And therefore, based on all of the circumstances, the arbitrator found that the company lacked just cause for discharge. The union argued consistently to the district court that when an arbitrator is interpreting a collective bargaining agreement, that interpretation must be upheld. And so, therefore, the union's argument before the district court has been consistent with the union's argument before this court. Now, in hindsight, could the union have articulated the argument better? Perhaps, but that is what we are before this court doing. And if there was, perhaps, a shift in the nuance of the union's argument or the union is refining its argument before this court, which is reviewing this case on de novo review, that should not be a reason to affirm the vacation of the arbitrator's award. Now, I would like to point out that, first of all, to Judge Shepard's question about whether or not there's an issue with pressure on the arbitrators to split the baby. This is not a split the baby case. We won this case, and the company doesn't like that. The company wants to vacate the arbitration award because the union was successful. And also, I would like to point out that the company agreed that the issue at arbitration was whether or not the company had just cause to terminate Mr. Buescher. The issue at arbitration was not whether Mr. Buescher was insubordinate. The company referred to some of the cases that it cited in its brief to support its argument on that point. But, for example, the Sears v. Automobile Petroleum and Allied Industrial Union, which is an Eastern District of Missouri case. In that case, the arbitration provision was limited the arbitrator to deciding whether or not the facts supported that the underlying offense occurred. So, basically, limited the arbitrator into deciding whether or not insubordination had occurred. And the arbitration provision specifically stated that the arbitrator cannot substitute his or her judgment for that of the company. Likewise, in St. Louis Theatrical Company, which is an Eighth Circuit case, also cited by the company to support its position on this point, the CBA provided that employees who violate the no-strike clause will be terminated, and that issue can go to an arbitrator. But the arbitrator is limited in deciding only whether or not the employee participated in the strike. In this case, there is no such limitation to the arbitrator's authority. The arbitrator was given the authority to interpret and apply the contract. The arbitrator was given the authority to decide whether just cause existed for discharge. And the company- Where does the contract say this? The contract, in Article 3 of the contract, which is on page 155 of the joint appendix, it says that the company can discharge for violation of such rules for proper and just cause. Then, again, in Article 21 of the contract, which is on page 172 of the joint appendix- Right. I see it here. Other proper, or for such other proper and just cause. Right. And then there's an article- Well, in the company, of course, the company's position is clear. In subordination, it constitutes just cause as a matter of law. However- Or contract, I should say. However, the company's position is that Article 29.02 of the contract requires discharge in any circumstance involving insubordination. And I'm not here to say what the contract says and what the contract doesn't say, because I would say that that's the job for the arbitrator. But the contract language specifically says that the application of the insubordination rule must be consistent with an employee's classification and safety. So the arbitrator found that insubordination does not require discharge in every circumstance, and not in this circumstance, given Mr. Busher's illness. And that does not- there's room for that in the contract language, where it says- Well, I guess that's for us to decide. Consistent- Back to your- I'm surprised in your brief you cited so many Third and Fourth Circuit cases, which are interesting, but of not any particular importance to us, are they? I mean, we're bound by what we've said in our earlier cases. Well, maybe some of those cases do- well, anyway. We'll read them for what they're worth. Okay. Well, I think that the Eighth Circuit has very similar- I mean, the Eighth Circuit has adopted the law of the Supreme Court, starting with the Steelworkers Trilogy all the way up through United States v. MISCO, which- You were not present yesterday for our en banc hearing, were you? I unfortunately was not, though I wish- But anyway, that's neither here nor there. Well, you're- well, let's see. I guess you have a minute and three seconds. Well, I'll just end with the law is very clear, as you know and as I'm sure you heard a lot about yesterday. The law is very clear that as long as an arbitrator is interpreting a contract, which is precisely what Arbitrator Fitzsimmons did here, the court must uphold his interpretation, and that is all. Very well. Thank you for your argument. Thank you. Thank both sides. The case is submitted, and we will take it under consideration.